248 P.3d 115 (2011)
Jeffrey R. McKEE, Appellant.
v.
WASHINGTON STATE DEPARTMENT OF CORRECTIONS, Respondent.
No. 39713-7-II.
Court of Appeals of Washington, Division 2.
March 8, 2011.
*116 Jeffrey R. McKee (Appearing Pro Se), Connel, WA, for Appellant.
Jean Elizabeth Meyn, Attorney General's Office Olympia, WA, for Respondent.
VAN DEREN, J.
¶ 1 Jeffrey R. McKee sued the Washington State Department of Corrections (DOC) for allegedly failing to produce three October 9, 2006, public record requests under the Public Records Act (PRA), chapter 42.56 RCW. McKee moved to disqualify the Washington State Attorney General's office from representing DOC and both parties moved for summary judgment. The trial court denied McKee's motions and, without determining whether DOC violated the PRA, granted summary judgment for DOC based on RCW 42.56.550(6)'s one year statute of limitations. We affirm the trial court's ruling that the Attorney General is properly bonded and may represent DOC but, because disputed material issues of fact preclude summary judgment on the trial court's statute of limitations ruling, we reverse summary judgment in favor of DOC and remand to the trial court to make factual findings regarding DOC's response to McKee's October 9 requests, to determine whether DOC denied him access to those records, and to further determine whether RCW 42.56.550(6) applies.

FACTS
¶ 2 McKee has been a prisoner in DOC's custody since July 2005. In July 2006, under a contract with Corrections Corporation of America (CCA), DOC transferred McKee to Florence Correctional Center (Florence CC) in Arizona, one of CCA's private facilities. McKee filed numerous grievances against Florence CC staff members and subsequently made three public records requests[1] to DOC by letters dated October 9, 2006, asking for all records that the Florence CC staff considered in resolving three of his grievances. On October 18, DOC informed McKee that it did not have the requested records and instructed McKee to direct his request to Florence CC. The contract between DOC and CCA required CCA to maintain its records in accordance with DOC policies and to comply with Washington's Public Disclosure Act, chapter 42.17 RCW, (now called the PRA).
¶ 3 On January 25, 2007, DOC sent another letter to McKee, informing him that Florence CC did not have any specific staff dedicated to public disclosure requests and offering to act as McKee's liaison to help him obtain the requested records. On March 2, DOC notified McKee that there were 291 pages available in response to his numerous records requests, including the three October 9, 2006, requests. DOC informed McKee that the records would cost $0.20 per page, plus $4.05 postage, for a total of $62.25. McKee's March 7 response indicated that he no longer needed all of the records originally requested and specifically identified the records he still wanted. His response did not indicate that he still wanted the records associated with his October 9, 2006, requests. McKee asked DOC to adjust the cost of his request accordingly. On March 28, DOC informed McKee that his requested records now consisted of 51 pages and the cost would be $12.27, plus an additional charge for one cassette tape. The DOC also stated that upon receipt of McKee's payment, it would send him the requested records.
¶ 4 On March 30, McKee requested that DOC waive payment for the remainder of the documents disclosed in DOC's March 2 letter because DOC had taken so long to make them available. In the alternative, McKee asked DOC to identify the number of documents and the cost associated with each request responded to in DOC's March 2 letter.
¶ 5 On April 3, DOC replied that McKee had two outstanding requests, costing $10.45 and $12.27 respectively. DOC relied on *117 McKee's March 7 statement that he wanted only some of the records, not including those in his October 9 requests and, thus, DOC did not include the cost of the October 9, 2006, requests.
¶ 6 On March 4, 2008, McKee filed[2] three lawsuits against DOC, complaining that DOC violated the PRA by not producing the records in response to each of his three October 9, 2006, requests. The trial court consolidated the three complaints. McKee subsequently paid DOC for copies associated with various record requests, including those he submitted on October 9. On September 9, 2008, DOC informed McKee (1) that records made available in its March 2, 2007, letter actually contained 284 pages, not 291 pages, and two pages of those records were exempt from disclosure; (2) that a refund of $2.20 would be issued to him; and (3) of the number of pages associated with each of his individual requests. DOC stated on appeal that the documents it claimed as exempt were not part of the three October 9 requests, but the record does not contain information allowing us to review this statement. McKee does not assert that the identified exempt records were related to the October 9 requests.
¶ 7 On December 31, McKee unsuccessfully moved to disqualify the Attorney General's office from representing DOC, claiming that the Attorney General was improperly bonded under former RCW 43.10.010 (1973).[3] Both parties then moved for summary judgment. On June 19, 2009, the trial court granted summary judgment for DOC, finding that McKee's complaints were not filed within RCW 42.56.550(6)'s one year statute of limitations. The trial court did not reach the issue of whether DOC denied access or claimed an exemption related to the October 9, 2006, requests nor did it specify how it determined RCW 42.56.550(6)'s statute of limitations applied. McKee appeals.

ANALYSIS

I. ATTORNEY GENERAL'S REPRESENTATION OF DOC
¶ 8 McKee argues that the trial court erred in denying his motion to disqualify the Attorney General's office from representing DOC. He contends that, because the Attorney General has not complied with bonding requirements, all of his actions as Attorney General are invalid. DOC responds that this issue is not properly before us because the order denying McKee's motion to disqualify the Attorney General is not appealable as a matter of right and McKee has not shown that discretionary review is appropriate.
¶ 9 Under RAP 2.4(a), an "appellate court will, at the instance of the appellant, review the decision or parts of the decision designated in the notice of appeal." In his notice of appeal, McKee designated the trial court's order denying his motion to disqualify the Attorney General. Thus, we may properly review the trial court's decision relating to the Attorney General's compliance with bonding requirements as it was part of the proceedings at the trial court.[4]

A. Standard of Review
¶ 10 "`Construction of a statute is a question of law which we review de novo under the error of law standard.'" Judd v. Am. Tel. & Tel. Co., 152 Wash.2d 195, 202, 95 P.3d 337 (2004) (quoting Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n, 123 Wash.2d 621, 627, 869 P.2d 1034 (1994)). When called upon to interpret a statute, our fundamental obligation is to give effect to the legislature's intent. Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wash.2d 1, 9, 43 P.3d 4 (2002). When interpreting a statute, *118 we first look to its plain language and, if the plain language is subject to only one interpretation, the inquiry ends because plain language does not require construction. Campbell & Gwinn, LLC, 146 Wash.2d at 9-10, 43 P.3d 4.

B. RCW 43.10.010
¶ 11 McKee argues that the blanket bond the Attorney General's office provides does not strictly or substantially comply with RCW 43.10.010's bonding requirements. The legislature implemented the bonding requirement for the State Attorney General in 1888 when the Attorney General's office was created. LAWS OF 1887-8, ch. 7, §§ 1, 4. The legislative history of the statute does not state the purpose of the bonding requirement. LAWS OF 1887-8, ch. 7, §§ 1, 4. RCW 43.10.010 states, in relevant part:
Before entering upon the duties of his or her office, any person elected or appointed attorney general shall . . . execute and file with the secretary of state, a bond to the state, in the sum of five thousand dollars, with sureties to be approved by the governor, conditioned for the faithful performance of his or her duties and the paying over of all moneys, as provided by law.
Additionally, RCW 42.12.010 provides that "[e]very elective office shall become vacant [upon h]is or her refusal or neglect . . . to give or renew his or her official bond, or to deposit such . . . bond within the time prescribed by law."
¶ 12 Here, RCW 43.10.010's plain language is not ambiguous. There must be a bond posted to secure the Attorney General's performance. The legislature has provided the means of posting the required bonds for elected state officers under RCW 42.08.100.[5]
¶ 13 In response to McKee's motion to disqualify the Attorney General's office, the Attorney General submitted a letter from Washington's Office of Financial Management (OFM) stating:
In compliance with RCW 42.08.100, a True and Certified Copy of the Original Public Officials Faithful Performance Bond was filed with the Secretary of State and the State Auditor. This bond has been in effect since January 14, 1985 and was approved by the Governor, the Secretary of State, a Justice of the Supreme Court, the State Auditor, the State Treasurer, the Attorney General, and the State Risk Manager.
Clerk's Papers (CP) at 15 (italics omitted). OFM also included a copy of the Attorney General's $5,000 bond.
¶ 14 McKee did not provide us with the record of the trial court's hearing on his motion to disqualify the Attorney General but, because the evidence satisfies the unambiguous language of both RCW 43.10.010 and RCW 42.08.100, we hold that the Attorney General is properly bonded in compliance with the bonding requirements of the State, the office is not vacant under RCW 42.12.100, and the Attorney General has statutory authority to perform the duties of his office. We affirm the trial court's denial of McKee's motion to disqualify the Attorney General.

II. SUMMARY JUDGMENT BASED ON STATUTE OF LIMITATIONS
¶ 15 DOC moved for summary judgment, asking the trial court to rule that it had complied with the PRA, thus entitling it to dismissal of McKee's claim. It also asked the trial court to rule that McKee's claim was time barred under RCW 42.56.550(6)'s one year statute of limitations.[6] The trial court did not first address the issue of DOC's compliance with the PRA but, instead, ruled that McKee filed his claims beyond RCW 42.56.550(6)'s one year statute of limitations.
*119 ¶ 16 McKee argues that the trial court erred in granting DOC's summary judgment motion. Specifically, McKee contends that his three PRA complaints are not barred by RCW 42.56.550(6)'s one year statute of limitations because DOC's March 2, 2007, letter was not a production of the requested material, as it did not itemize the individual cost to copy the documents associated with each October 9, 2006, request. He asserts that the statute of limitations began to run on either (1) April 5, 2007, two days after DOC's April 3 letter informing him of the cost of his requested documents in answer to his March 30 demand that he receive all remaining documents free or, in the alternative, that DOC tell him how much each document on his list of requested documents cost or (2) September 9, 2008, when DOC claimed for the first time that some of the requested records were exempt.[7]
¶ 17 We review both agency action under the PRA and a trial court's disposition of a motion for summary judgment de novo. RCW 42.56.550(3); Jones v. Allstate Ins. Co., 146 Wash.2d 291, 300, 45 P.3d 1068 (2002). Summary judgment is appropriate where "the pleadings, affidavits, and depositions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Jones, 146 Wash.2d at 300-01, 45 P.3d 1068; CR 56(c).
¶ 18 Under RCW 42.56.550(1), a party may seek judicial review under the PRA when the party has "been denied an opportunity to inspect or copy a public record by an agency."[8] Our Supreme Court has held that records are "`produced'" under the PRA when they are "made available for inspection and copying." Sanders v. State, 169 Wash.2d 827, 836, 240 P.3d 120 (2010). RCW 42.56.550(6) provides that actions under RCW 42.56.550 "must be filed within one year of the agency's claim of exemption or the last production of a record on a partial or installment basis." RCW 42.56.550(6).
¶ 19 After the parties filed their briefs, Division One of this court held that RCW 42.56.550(6)'s one year statute of limitations applies only when an agency claims an exemption or when it produces requested records in a piecemeal manner, not when an agency produces all requested records. Tobin v. Worden, 156 Wash.App. 507, 514-15, 233 P.3d 906 (2010).[9] Thus, under Tobin, the trial court must first determine whether the agency folly and timely produced the requested records and then determine the applicable statute of limitations. 156 Wash. App. at 512-13, 233 P.3d 906. Normally, a trial court's conclusion that the agency fully and timely complied with the PRA in producing requested records will result in dismissal of the PRA violation claim. But under the PRA, at a hearing to determine whether the agency violated the PRA, the agency may also ask the trial court to determine the applicable statute of limitations, which DOC did here. The trial court may then necessarily resolve both the factual issue of whether the agency complied with the PRA and fully and timely produced the records and the legal issue of the appropriate statute of limitations.
¶ 20 Here, before granting DOC's summary judgment motion based on the one year statute of limitations, the trial court did not discuss whether (1) it was applying the statute of limitations because DOC claimed an exemption to the requested records or (2) DOC produced the records on a partial or installment basis. The trial court did not make findings about DOC's response to the October 9, 2006, requests or how McKee's subsequent correspondence about his October 9 requests affected DOC's duty to respond to McKee's requests. DOC's March 2, 2007, letter appears to have made the October *120 9 documents available for McKee to copy, contingent on his payment.[10] But McKee argues that, because DOC did not provide an itemized list showing the cost for each requested document that he requested on March 30, 2007, it failed to produce the records he requested on October 9.[11]
¶ 21 DOC's March 2, 2007, letter appears to have made the October 9 requested records "available for copying and inspection." Sanders, 169 Wash.2d at 836, 240 P.3d 120. Thereafter, McKee's March 7, 2007, letter indicated that he no longer wanted the records he requested on October 9. Then, on March 30, 2007, McKee demanded an itemized list of the cost of each record he had requested over time, apparently also including the October 9 requests that he had previously indicated he did not want. Furthermore, McKee did not send DOC payment for his October 9 records request until he had filed his complaints against DOC nor did he ever have a person inspect the available documents on his behalf.
¶ 22 McKee cites no authority for his argument that the statute of limitations was extended when he asked for the cost associated with each of his outstanding PRA requests after he indicated that he no longer wanted copies of the documents related to his October 9, 2006, requests. It may be that DOC allowed McKee access to agency records, consistent with the intent of the PRA, but the trial court is in the best position to resolve this material factual dispute that precludes summary judgment.
¶ 23 McKee filed his three complaints on March 4, 2008, beyond RCW 42.56.550(6)'s one year statute of limitations but within a possible two year statute of limitations under chapter 4.16 RCW. Because the applicable statute of limitations rests on disputed material facts that the trial court did not resolve, we remand for further proceedings, including legal and factual findings regarding DOC's response to McKee's October 9, 2006, requests to determine whether DOC violated the PRA and whether RCW 42.56.550(6)'s one year statute of limitations applies.

III. ATTORNEY FEES
¶ 24 McKee asks us to award him attorney fees and costs for this appeal. The PRA authorizes attorney fees and costs to a person who prevails against an agency in an action under the PRA. RCW 42.56.550(4). As McKee did not prevail against the DOC in his PRA action, we do not award him attorney fees and costs. The trial court may consider the award of attorney fees and costs at the conclusion of the case on remand.
¶ 25 We affirm the trial court's ruling that the Attorney General is properly bonded and may represent DOC but reverse the trial court's order of summary judgment in favor of DOC based on RCW 42.56.550(6)'s one year statute of limitations and remand for further proceedings.
We concur: ARMSTRONG, J., and WORSWICK, A.C.J.
NOTES
[1] Although McKee made many different public record requests to DOC, the three October 9, 2006, requests form the basis of his appeal.
[2] Under GR 3.1, an inmate's complaint is considered filed on the day it is deposited in the prison's mail system.
[3] At the time that McKee filed his complaints, former RCW 43.10.010 was in effect. The legislature amended the statute in 2009. LAWS OF 2009, ch. 549, § 5046. Because the 2009 amendments do not materially affect our analysis, we refer to the current statute in analyzing McKee's claims.
[4] Moreover, the State points out that McKee has unsuccessfully raised this same argument in at least nine PRA cases. In the interest of judicial economy, we address the issue to provide resolution of the argument and, thus, avoid needless, repetitive litigation.
[5] RCW 42.08.100 states:

The official bonds of officers shall be approved and filed as follows, to wit: The official bond of the secretary of state shall be approved by the governor and filed in the office of the state auditor. The official bonds of all other state officers required by law to give bonds, except as otherwise expressly provided by law, shall be approved by the governor and filed in the office of the secretary of state.
[6] RCW 42.56.550(6) states, "Actions under this section must be filed within one year of the agency's claim of exemption or the last production of a record on a partial or installment basis."
[7] McKee also argues that DOC engaged in "[s]ilent [w]ithholding" of documents, but the trial court did not reach this issue and it is not properly before us, although the trial court may consider it on remand. Br. of Appellant at 20.
[8] McKee had the right to inspect the records through a personal representative under WAC 137-08-100.
[9] This results in a longer statute of limitations against an agency that promptly and properly produces records under the PRA than against one that claims an exemption or produces the records on a partial or installment basis.
[10] Agencies may charge a reasonable fee for copying documents requested under the PRA. RCW 42.56.120.
[11] To support this argument, McKee points to an unpublished DOC policy 280.510(III)(B) that provides, "[DOC] staff will notify the requestor in writing of the exact copying charges for the requested records" in response to a prisoner's public records request. CP at 393. McKee argues that DOC did not comply with this policy and, thus, that the March 2, 2007, letter was insufficient production of the October 9, 2006, requested documents under the PRA. But McKee sued under the PRA, which does not incorporate unpublished agency policies. Thus, this argument fails. Here, even if the DOC policies applied to our review, DOC complied with DOC 280.510(III)(B) by giving McKee the exact cost for all of his recordsthe DOC policy does not state that the cost of records must be individually identified.